CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

7/18/2024
LAURA A. AUSTIN, CLERK
BY:  s/ ARLENE LITTLE
      DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

| | |
|---|---|
| **STANLEY LEE BROWN, JR.** ) | |
| ) | |
| **and** ) | |
| ) | |
| **DA'QUAN HUNT,** ) | |
|     *Plaintiffs,* ) | |
| ) | |
| **v.** ) | |
| ) | |
| **THE CITY OF LYNCHBURG** ) | **CASE No.:** _____ 6:24CV00039 |
| ) | |
| **and** ) | |
| ) | |
| **LPD OFFICER GARRETT WATERMAN,** ) | |
|     *in his individual capacity* ) | |
| ) | |
| **and** ) | |
| ) | |
| **LPD OFFICERS JOHN DOES 1-20,** ) | |
|     *in their individual capacities* ) | |
| ) | |
| **and** ) | |
| ) | |
| **LPD OFFICER JANE DOES 1-5,** ) | |
|     *in their individual capacities* ) | |
| ) | |
| **and** ) | |
| ) | |
| **VIRGINIA STATE TROOPER JOHN ROE,** ) | |
|     *in his individual capacity* ) | |
|         *Defendants.* ) | |

## COMPLAINT

**COME NOW** the Plaintiffs, Stanley Lee Brown, Jr.  ("BROWN") and Da'quan Hunt

("HUNT"), and bring this civil rights action to recover damages arising from the injuries they

Page **1** of **27**

sustained when their Fourth and Fourteenth Amendment rights were violated during their unlawful detention and search by officers of the Lynchburg Police Department on or about May 19, 2023. Plaintiffs assert federal claims pursuant to 42 U.S.C. § 1983 for unlawful seizure, search and excessive force, as well as common law civil claims for (i) assault, (ii) battery and (iii) intentional infliction of emotional distress.

## JURISDICTION AND VENUE

1.      This action arises under federal law and the Fourth and Fourteenth Amendments to the United States Constitution.

2.      This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1983 and 1985.

3.      This Court has supplemental jurisdiction over the state claims asserted in this action pursuant to 28 U.S.C. § 1367.

4.      Venue is proper in this district under 28 U.S.C. §1391(b), because (i) each of the named defendants is a resident of the Western District of Virginia pursuant to 28 U.S.C. § 1391(c)(2), and (ii) pursuant to 28 U.S.C. § 1391(b)(2) all of the events or omissions giving rise to the claims occurred in the City of Lynchburg in the Western District of Virginia.

## PARTIES

5.      Plaintiff Stanley Lee Brown, Jr. ("BROWN") is a resident of the City of Lynchburg.

6.      Plaintiff Da'Quan Hunt ("HUNT") is a resident of the City of Lynchburg.

7.      Defendant CITY OF LYNCHBURG is a city incorporated pursuant to the laws of the Commonwealth of Virginia. The City of Lynchburg operates the Lynchburg Police Department ("LPD").

8.      Defendant Officer Seth Garrett Waterman ("WATERMAN") was a police officer employed by the Lynchburg Police Department on May 19, 2023.

9.      Defendant Officers JOHN DOES 1-20 and JANE DOES 1-5 were police officers employed by the Lynchburg Police Department on May 19, 2023.

10.     Defendant Trooper JOHN ROE was a Virginia State Trooper on May 19, 2023.

## FACTS

**I. Traffic Stop, Detention and Search on May 19, 2023**

11.     The use of force described below was captured on body worn camera and dashcam video recordings and is recorded on police reports and dispatch records, these records are public records and the City of Lynchburg has the discretion to disclose them, but has chosen to conceal the records from public inspection.

12.     In the late evening of May 19, 2023, BROWN was driving a vehicle with HUNT in the passenger street in the area of Kemper and 12th Street in the City of Lynchburg, Virginia.

13.     BROWN was signaled to pull over by the activation of blue emergency lights on a patrol car operated by one of the defendant Lynchburg Police Officers.

14.     BROWN pulled over in the parking lot of the Dash Foodmarket store.

15.     WATERMAN approached the driver's window of the stopped vehicle and addressed BROWN by his name.

16.     BROWN protested that WATERMAN was unlawfully stopping him.

17.     One of the JOHN DOES 1-20 approached the passenger door of the stopped vehicle.

18.     Both BROWN and HUNT were removed from the vehicle and handcuffed without explanation.

19.     WATERMAN handcuffed BROWN.

20.     One of the defendant JOHN DOES 1-20 handcuffed HUNT.

21.     BROWN was patted down and placed in a patrol car by WATERMAN.

22.     HUNT was patted down and placed at the front of the vehicle by one of the defendant JOHN DOES 1-20.

23.     WATERMAN told BROWN that the reason for the traffic stop was that the plates did not match the registration.

24.     WATERMAN unlawfully delayed the traffic stop to bring a drug dog team to the vehicle.

25.     At most, WATERMAN had only a reasonable suspicion that BROWN had committed a minor traffic infraction, not a crime.

26.     One of the defendant JOHN DOES 1-20 falsely stated that the drug dog "alerted" on the vehicle, when in fact the dog did not alert.

27.     The false "alert" of the drug dog was used as a pretense to conduct an exhaustive, pointless and unfruitful search of the vehicle.

28.     BROWN and HUNT remained detained and in handcuffs for approximately an hour while the vehicle was searched.

29.     When the search was finished, WATERMAN, acting out of malice and with lascivious intent, placed HUNT against the truck under the pretense of conducting a search and then sexually assaulted HUNT by running his ungloved hand through HUNT's gluteal cleft and by touching his anus and his testicles through HUNT's underwear.

30.     After sexually assaulting HUNT, WATERMAN released HUNT from handcuffs.

31.     HUNT reached for his phone to record the incident.

32.     One of the defendant JANE DOES 1-5 unlawfully instructed HUNT not to record, in order to cover up the ongoing sexual assault and the ongoing violation of civil rights.

33.     After releasing HUNT, WATERMAN moved BROWN from the patrol car to stand against the stopped vehicle, where WATERMAN, acting with malice and with lascivious intent, sexually assaulted BROWN by running his ungloved hand through BROWN's gluteal cleft and by grabbing each of BROWN's testicles through BROWN's clothing before penetrating BROWN's anus with his finger through his clothing.

34.     BROWN loudly protested the sexual assault.

35.     After BROWN protested the sexual assault, WATERMAN repeated it, this time telling BROWN not to "flinch."

36.     Each of the defendants observed WATERMAN sexually assaulting BROWN.

37.     Each of the defendants knew, or should reasonably have known, that neither the minor suspected traffic registration infraction nor the fruitless search of the stopped vehicle, provided any justification for an invasive search of HUNT or BROWN.

38.     Each of the individual defendants had a duty to intervene to stop WATERMAN from sexually assaulting HUNT and BROWN.

39.     None of the defendant Lynchburg Police Officers intervened to stop WATERMAN from engaging in the unlawful seizures and searches and the sexual assaults of HUNT and BROWN.

40.     Defendant JOHN ROE, a Virginia State Trooper, was on scene and observed the search of the vehicle and the assaults on BROWN and HUNT, without intervening.

41.     Defendant JOHN ROE had a duty to intervene and to stop WATERMAN from engaging in the unlawful seizures and searches and the sexual assaults of HUNT and BROWN.

### III.  LPD Policies, Customs and Practices

42.     The Lynchburg Police Department maintains facially constitutional policies regarding detention and invasive searches, but these policies are routinely ignored in custom and in practice.

43.     The following specific examples demonstrate the LPD's unconstitutional customs or practices.

a.   On June 27, 2020 WATERMAN unlawfully searched and sexually assaulted Shanta Orlando Hubbard after stopping a vehicle for a traffic infraction and after conducting a frisk in a manner similar to the way that WATERMAN sexually assaulted HUNT and BROWN.

b.   On July 20, 2020, after stopping Jaquan Goode for "squealing tires," WATERMAN unlawfully detained and sexually assaulted Goode in a manner similar to the way that WATERMAN sexually assaulted HUNT and BROWN.

c.   On September 29, 2020, after stopping Khalik Jamal Braxton (then a sergeant in the U.S. Army) for a suspected minor window tint infraction, WATERMAN sexually assaulted Braxton  in a manner similar to the way that WATERMAN sexually assaulted HUNT and BROWN.

d.   On May 26, 2022, WATERMAN sexually assaulted Douglas Jerome Thomas, Jr. by touching his genitals after stopping a vehicle for a traffic infraction and after conducting a frisk in a manner similar to the way that WATERMAN sexually assaulted HUNT and BROWN.

e.   Upon information and belief on March 29, 2001, Craig Morris was sprayed with pepper spray and then struck several times by officers of the Lynchburg Police Department. The officers were allegedly putting Mr. Morris under arrest for using the term "f_ck", and Mr. Morris did not resist arrest or use any force against the officers, but nevertheless was beaten by said officers of the Lynchburg Police Department;

f.   Upon information and belief on October 18, 2013, Montavious Wells and Tramane Green were injured by officers of the Lynchburg Police Department when they were tasered and beaten by officers for allegedly getting smart when asked to identify what high school they went to. Neither Mr. Wells nor Mr. Green threatened the officers, threatened to flee from the officers, or posed a danger to any officers or the public;

g.   Upon information and belief on January 23, 2016, George Brown was injured when officers of the Lynchburg Police Department ordered the police K9 to attack Mr. Brown, while Mr. Brown was not resisting arrest or presenting any threat to the officers.

h.   On February 4, 2016, officers of the LPD stopped and tackled Tershaud Rose, who had committed no crime, drove his head into the pavement and held him down while a hospital security guard scarred his back with a taser, before manufacturing false charges against Rose as a cover-up;

i.   Upon information and belief on February 11, 2016, Brandon Sandifer was injured when officers of the Lynchburg Police Department broke his leg during an arrest at his home for  trespassing, thereby using unreasonable and excessive force;

j.  Upon information and belief on November 28, 2016, Donald Lipford was injured when officers of the Lynchburg Police Department struck him several times and ordered the police K9 to attack Mr. Lipford, while he was not resisting arrest or presenting any threat to the officers;

k.  Upon information and belief on November 5, 2017, Pamela Webber was shot and killed by officers of the Lynchburg Police Department, when they were called to her residence on allegations that she was suicidal and had a knife. After barricading herself in her room, Ms. Webber was convinced to come out by officers of the Lynchburg Police Department, and they shot her alleging that she "advanced" with the knife on the officer;

l.  Upon information and belief on February 17, 2018, Walker Sigler was shot by officers of the Lynchburg Police Department, while he was in his home, committing no crime, not presenting a threat to the officers, was unarmed, and not attempting to flee the officers;

m.  On July 18, 2018, LPD officers used a police canine against Larry Booker without justification, thereby causing him injuries;

n.  Upon information and belief on December 12, 2018, Michelle Jefferson was injured by officers of the Lynchburg Police Department while they were serving a warrant on her at her home. She was grabbed and assaulted by the officers and charged with assault on law enforcement;

o.   Upon information and belief on December 30, 2018, Malik Andrews was shot by officers of the Lynchburg Police Department after officers saw him with a rifle on his shoulder;

p.   Upon information and belief on March 30, 2019, Thyanna Trent was assaulted and injured by officers of the Lynchburg Police Department, while allegedly trespassing while walking toward the exit at the River Ridge Mall in Lynchburg;

q.   Upon information and belief on June 16, 2019, Brian Anderson was injured by officers of the Lynchburg Police Department for allegedly obstructing justice. Mr. Anderson was pulled out of his truck and thrown to the ground, had officers hold him down by their knees, while other officers yanked his arms, causing injury to his shoulders;

r.   Upon information and belief on July 3, 2019, Mario Jackson was injured by officers of the Lynchburg Police Department after he was stopped for an alleged "window tint violation." After having Mr. Jackson exit his vehicle the officers grabbed him and slammed him against the car, threw him to the ground, then beat him while he begged the officers to stop;

s.   Upon information and belief on March 7, 2020, Aniyah Hicks was injured by officers of the Lynchburg Police Department, requiring her to receive seven stitches to close a gash above her eye, when she was assaulted, thrown to the ground, then had her face mashed to the ground by Officer Godsie, while she was presenting no danger to any officer or the public, was not attempting to flee, and was breaking no law, other than being present at a fight

## COUNT ONE

**VIOLATION OF CIVIL RIGHTS: UNLAWFUL SEIZURE OF HUNT BY WATERMAN, JOHN DOES 1-20 , JANE DOES 1-5 AND JOHN ROE**

**(42 U.S.C. § 1983 - 4th and 14th Amendments)**

44.     All previous paragraphs of this Complaint are incorporated herein by reference and are re-alleged as if restated.

45.     After the traffic stop on May 19, 2023, WATERMAN, acting in concert with JOHN DOES 1-20, JANE DOES 1-5 and JOHN ROE, deliberately delayed the execution of traffic summons[1] for the minor registration infraction that was the purported basis of the stop in order to call for a drug detection dog team.

46.     After the drug detection dog team arrived, the dog's handler, who was one of the JOHN DOES 1-20 and WATERMAN, acting jointly, falsely claimed that the dog had "alerted" to an odor of contraband and used this falsity to attempt to justify the unlawful and unconstitutional detention of HUNT and BROWN while the vehicle was searched in vain for evidence of contraband.

47.     Upon information and belief, WATERMAN, several of the JOHN DOES 1-20 and at least one of the JANE DOES 1-5 participated in the unlawful and unconstitutional search of the vehicle.

48.     HUNT was unlawfully detained by WATERMAN and several of the JOHN DOES 1-20 and JANE DOES 1-5 defendants during the search of the vehicle.  This unlawful detention was a seizure as contemplated by the Fourth Amendment to the United States Constitution.

---

[1]  Indeed, this delay was infinite because WATERMAN never wrote any summons for the purported infraction.

49.     At all times relevant to this Complaint, HUNT was a citizen of the United States and of the Commonwealth of Virginia, and had a clearly established right under the Fourth and Fourteenth Amendments of the U.S. Constitution, to be free from unlawful seizure.

## COUNT TWO

### VIOLATION OF CIVIL RIGHTS: UNCONSTITUTIONAL AND UNLAWFUL BODY CAVITY SEARCH OF HUNT BY WATERMAN, JOHN DOES 1-20, JANE DOES 1-5 AND JOHN ROE AGAINST HUNT

### (42 U.S.C. § 1983 - 4th and 14th Amendments)

50.     All previous paragraphs of this Complaint are incorporated herein by reference and are re-alleged as if restated.

51.     As described above,  on May 19, 2023, WATERMAN, aided and abetted by, and in concert with, one or more JOHN DOES 1-20, JANE DOES 1-5 and JOHN ROE, while acting under color of state law, conducted an unreasonable, unlawful and unconstitutional body cavity search of HUNT in violation of clearly established Fourth and Fourteenth Amendment rights.

52.     None of the defendants sought or obtained a search warrant authorizing the body cavity search of HUNT.

53.     HUNT did not consent to the search of his person.

54.     No exigent circumstances existed that justified the search of HUNT's person.

55.     The body cavity search of HUNT was unreasonable. It was conducted out of WATERMAN's prurient interest and it was conducted with actual malice.

56.     HUNT had an expectation of privacy in his person as contemplated by the Fourth Amendment to the United States Constitution.

## COUNT THREE

## VIOLATION OF CIVIL RIGHTS: EXCESSIVE AND UNREASONABLE FORCE BY WATERMAN, JOHN DOES 1-20, JANE DOES 1-5 AND JOHN ROE AGAINST HUNT BY MEANS OF SEXUAL ASSAULT

### (42 U.S.C. § 1983 - 4th and 14th Amendments)
`

57.     All previous paragraphs of this Complaint are incorporated herein by reference and are re-alleged as if restated.

58.     WATERMAN, while acting under color of state law, conducted an unreasonable seizure of HUNT by employing excessive force to sexually assault HUNT in violation of clearly established Fourth and Fourteenth Amendment rights.

59.     WATERMAN's use of force during the sexual assault was excessive and had no conceivable legal justification or purpose.

60.     WATERMAN was assisted in his sexual assault by several of the JOHN DOES 1-20 and at least one of the JANE DOES 1-5, who held HUNT's arms while WATERMAN sexually assaulted him.

61.     Any reasonable officer in the same situation should have recognized that WATERMAN's use of severe force against HUNT was excessive and a violation of HUNT's Constitutional rights.

62.     No extraordinary situation existed at the time of HUNT's detention that justified the severe and extraordinary force that was used against him WATERMAN during the sexual assault.

63.      As a direct and proximate result of WATERMAN's sexual assault, HUNT suffered significant pain along with severe mental and emotional harm.

64.     WATERMAN acted with actual malice when he sexually assaulted HUNT.

65.     HUNT is entitled to recover (a) reasonable and appropriate compensatory damages, (b) punitive damages, (c) costs, expenses and reasonable attorney's fees, and (d) such other and further relief as this Court deems necessary and proper from WATERMAN, JOHN DOES 1-20, JANE DOES 1-5 and JOHN ROE.

## COUNT FOUR

### VIOLATION OF CIVIL RIGHTS: BYSTANDER LIABILITY OF JOHN DOES 1-20, JANE DOES 1-5 AND JOHN ROE TO HUNT

### (42 U.S.C. § 1983 - 4th and 14th Amendments)

66.     All previous paragraphs of this Complaint are incorporated herein by reference and are re-alleged as if restated.

67.     Each of the JOHN DOES 1-20, JANE DOES 1-5 and JOHN ROE who were present at the scene of the traffic stop knew that their fellow officers (including WATERMAN) were violating HUNT's constitutional rights when HUNT was unlawfully seized as described above.

68.     Each of the JOHN DOES 1-20, JANE DOES 1-5 and JOHN ROE who were present at the scene of the traffic stop knew that their fellow officers (including WATERMAN) were violating HUNT's constitutional rights when HUNT was sexually assaulted as described above.

69.     Each of the JOHN DOES 1-20, JANE DOES 1-5 and JOHN ROE who were present at the scene of the traffic stop had the reasonable opportunity to act to prevent or to stop the harm to HUNT caused by fellow officers (including WATERMAN) as described above.

70.    Each of the JOHN DOES 1-20, JANE DOES 1-5 and JOHN ROE who were present at the scene of the traffic stop chose not to act to prevent or to stop the harm to HUNT caused by fellow officers (including WATERMAN) as described above.

71.    As a direct and proximate result of the deliberate refusal of JOHN DOES 1-20, JANE DOES 1-5 and JOHN ROE to intervene in the unlawful and unconstitutional seizure and sexual assault of HUNT by fellow officers (including WATERMAN), HUNT suffered significant pain along with severe mental and emotional harm.

72.    JOHN DOES 1-20, JANE DOES 1-5 and JOHN ROE acted with actual malice when they refused to intervene to prevent or stop the unlawful and unconstitutional detention and sexual assault of HUNT by other officers (including WATERMAN).

73.    HUNT is entitled to recover (a) reasonable and appropriate compensatory damages, (b) punitive damages, (c) costs, expenses and reasonable attorney's fees, and (d) such other and further relief as this Court deems necessary and proper from JOHN DOES 1-20, JANE DOES 1-5 and JOHN ROE for their failure to intervene to prevent or stop the unlawful and unconstitutional sexual assault.

## <u>COUNT FIVE</u>

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS UPON HUNT BY WATERMAN

### (Virginia Common Law Claim)

74.    All previous paragraphs of this Complaint are incorporated herein by reference and are re-alleged as if restated.

75.     WATERMAN acted with actual malice when he intentionally and cruelly committed sexual assault against HUNT on May 19, 2023.

76.     WATERMAN's conduct was intolerable, outrageous and shocks the conscience of any reasonable person.

77.     WATERMAN engaged in this vicious conduct with the deliberate intent of causing extreme emotional distress in the form of excruciating pain, torment and fear in order to fulfil his own grotesque prurient interest.

78.     No person could be expected to endure the emotional distress that WATERMAN caused to be inflicted upon HUNT.

79.     HUNT is entitled to recover compensatory damages, costs, punitive damages, reasonable attorney's fees and such other relief as this Court deems appropriate from WATERMAN due to his intentional infliction of emotional distress upon HUNT on May 19, 2023.

## COUNT SIX

**CIVIL ASSAULT AND BATTERY BY DEFENDANTS WATERMAN, JOHN DOES 1-20, JANE DOES 1-5 AGAINST HUNT**

**(Virginia Common Law Claim)**

80.     All previous paragraphs of this Complaint are incorporated herein by reference and are re-alleged as if restated.

81.     WATERMAN without cause or justification, aided, abetted and in concert with certain JOHN DOES 1-20 and JANE DOES 1-5, unlawfully assaulted and battered HUNT by sexually assaulting him as described above.

82.     HUNT did not consent to being assaulted or battered and did not consent to the sexual assault by WATERMAN.

83.     WATERMAN acted with actual malice when he assaulted and battered HUNT on May 19, 2023.

84.     WATERMAN acted in wanton and willful disregard of HUNT's rights when he assaulted and battered HUNT on May 19, 2023..

85.     As a direct and proximate result of WATERMAN's unlawful assault and battery, HUNT suffered significant physical injuries, mental anguish, and emotional harm.

86.     HUNT is entitled to recover (a) reasonable and appropriate compensatory damages, (b) punitive damages, (c) costs, expenses and reasonable attorney's fees, and (d) such other and further relief as this Court deems necessary and proper from WATERMAN, JOHN DOES 1-20 and JANE DOES 1-5 for the injuries he sustained as result of assault and battery on May 19, 2023.

## COUNT SEVEN

### MUNICIPAL LIABILITY OF THE CITY OF LYNCHBURG TO HUNT– UNCONSTITUTIONAL CUSTOM OR PRACTICE -  BODY CAVITY SEARCH

### (42 U.S.C. § 1983 - 4th and 14thAmendments)

87.     All previous paragraphs of this Complaint are incorporated herein by reference and are re-alleged as if restated.

88.     The LPD maintains a facially constitutional policy with regard to strip searches and body cavity searches.

89.     However, by pattern of conduct as described above, LPD officers in general (and WATERMAN in particular) routinely engage in body cavity and strip searches that violate the official written policies.

90.     WATERMAN's sexual assault of HUNT was conducted under the pretext of a body cavity search.

91.     LPD officers routinely fail to follow their facially constitutional policies by engaging in the unconstitutional custom of using excessive force.

92.     The CITY OF LYNCHBURG has been put directly on notice of the existence and extent of the unconstitutional custom of condoning and approving unlawful and unconstitutional strip searches and body cavity searches through a series of lawsuits, complaints, press coverage and investigations, but the City has done nothing to end the custom.

93.     The CITY OF LYNCHBURG has acted with deliberate indifference to the constitutional rights of its residents and citizens to be free from unlawful and unconstitutional strip searches and body cavity searches by LPD officers.

94.     The custom of the police officers employed by the CITY OF LYNCHBURG  of conducting unlawful and unconstitutional strip searches and body cavity searches was a direct cause and moving force behind the injuries HUNT sustained.

## COUNT EIGHT

**VIOLATION OF CIVIL RIGHTS: UNLAWFUL SEIZURE OF BROWN BY WATERMAN, JOHN DOES 1-20 AND JANE DOES 1-5**

**(42 U.S.C. § 1983 - 4th and 14th Amendments)**

95.     All previous paragraphs of this Complaint are incorporated herein by reference and are re-alleged as if restated.

96.     After the traffic stop on May 19, 2023, WATERMAN, acting in concert with JOHN DOES 1-20, JANE DOES 1-5 and JOHN ROE, deliberately delayed the execution of traffic summons[2] for the minor registration infraction that was the purported basis of the stop in order to call for a drug detection dog team.

97.     After the drug detection dog team arrived, the dog's handler, who was one of the JOHN DOES 1-20 and WATERMAN, acting jointly, falsely claimed that the dog had "alerted" to an odor of contraband and used this falsity to attempt to justify the unlawful and unconstitutional detention of HUNT and BROWN while the vehicle was searched vainly for evidence of contraband.

98.     Upon information and belief, WATERMAN, several of the JOHN DOES 1-20 and at least one of the JANE DOES 1-5 participated in the unlawful and unconstitutional search of the vehicle.

99.     BROWN was unlawfully detained by WATERMAN, acting in concert with several of the JOHN DOES 1-20 and JANE DOES 1-5 defendants during the search of the vehicle.  This unlawful detention was a seizure as contemplated by the Fourth Amendment to the United States Constitution.

---

[2]  Indeed, this delay was infinite because WATERMAN never wrote any summons for the purported infraction.

100.    At all times relevant, BROWN was a citizen of the United States and of the

Commonwealth of Virginia, and had a clearly established right under the Fourth and Fourteenth

Amendments of the U.S. Constitution, to be free from unlawful seizure.

101.    BROWN suffered damages as a result of the unlawful detention.

## COUNT NINE

**VIOLATION OF CIVIL RIGHTS: UNCONSTITUTIONAL AND UNLAWFUL BODY CAVITY SEARCH OF BROWN BY WATERMAN, JOHN DOES 1-20, JANE DOES 1-5 AND JOHN ROE AGAINST BROWN**

**(42 U.S.C. § 1983 - 4th and 14th Amendments)**

102.    All previous paragraphs of this Complaint are incorporated herein by reference and are

re-alleged as if restated.

103.    As described above, on May 19, 2023, WATERMAN, aided, abetted in concert with one

or more JOHN DOES 1-20, JANE DOES 1-5 and JOHN ROE, while acting under color of state

law, conducted an unreasonable, unlawful and unconstitutional body cavity search of BROWN

in violation of clearly established Fourth and Fourteenth Amendment rights.

104.    None of the defendants sought or obtained a search warrant authorizing the body cavity

search of BROWN.

105.    BROWN did not consent to the search of his person.

106.    No exigent circumstances existed that justified the search of BROWN's person.

107.    The body cavity search of BROWN was unreasonable. It was conducted out of

WATERMAN's prurient interest and it was conducted with actual malice.

108.    BROWN had an expectation of privacy in his person as contemplated by the Fourth

Amendment to the United States Constitution.

## COUNT TEN

**VIOLATION OF CIVIL RIGHTS: EXCESSIVE AND UNREASONABLE FORCE BY WATERMAN, JOHN DOES 1-20, JANE DOES 1-5 AND JOHN ROE AGAINST BROWN BY MEANS OF SEXUAL ASSAULT**

**(42 U.S.C. § 1983 - 4th and 14th Amendments)**
`

109.    All previous paragraphs of this Complaint are incorporated herein by reference and are re-alleged as if restated.

110.    WATERMAN, while acting under color of state law, conducted an unreasonable seizure of BROWN by employing excessive force to sexually assault BROWN in violation of clearly established Fourth and Fourteenth Amendment rights.

111.    WATERMAN's use of force during the sexual assault was excessive and had no conceivable legal justification or purpose.

112.    WATERMAN was assisted in his sexual assault by several of the JOHN DOES 1-20 and at least one of the JANE DOES 1-5, who held BROWN's arms while WATERMAN sexually assaulted him.

113.    Any reasonable officer in the same situation should have recognized that the WATERMAN's use of severe force against BROWN was excessive and a violation of BROWN's Constitutional rights.

114.    No extraordinary situation existed at the time of BROWN's detention  that justified the severe and extraordinary force that was used against him by WATERMAN during the sexual assault.

115.     As a direct and proximate result of WATERMAN's sexual assault, BROWN suffered significant pain along with severe mental and emotional harm.

116.     WATERMAN acted with actual malice when he sexually assaulted BROWN.

117.     BROWN is entitled to recover (a) reasonable and appropriate compensatory damages, (b) punitive damages, (c) costs, expenses and reasonable attorney's fees, and (d) such other and further relief as this Court deems necessary and proper from WATERMAN, JOHN DOES 1-20, JANE DOES 1-5 and JOHN ROE.

**COUNT ELEVEN**

**VIOLATION OF CIVIL RIGHTS: BYSTANDER LIABILITY OF JOHN DOES 1-20, JANE DOES 1-5 AND JOHN ROE TO BROWN**

118.     All previous paragraphs of this Complaint are incorporated herein by reference and are re-alleged as if restated.

119.     Each of the JOHN DOES 1-20, JANE DOES 1-5 and JOHN ROE who were present at the scene of the traffic stop knew that their fellow officers (including WATERMAN) were violating BROWN's constitutional rights when BROWN was unlawfully seized as described above.

120.     Each of the JOHN DOES 1-20, JANE DOES 1-5 and JOHN ROE who were present at the scene of the traffic stop knew that their fellow officers (including WATERMAN) were violating BROWN's constitutional rights when BROWN was sexually assaulted as described above.

121.     Each of the JOHN DOES 1-20, JANE DOES 1-5 and JOHN ROE who were present at the scene of the traffic stop had the reasonable opportunity to act to prevent or to stop the harm to BROWN caused by fellow officers (including WATERMAN) as described above.

122.    Each of the JOHN DOES 1-20, JANE DOES 1-5 and JOHN ROE who were present at the scene of the traffic stop chose not to act to prevent or to stop the harm to BROWN caused by fellow officers (including WATERMAN) as described above.

123.    As a direct and proximate result of the deliberate refusal of JOHN DOES 1-20, JANE DOES 1-5 and JOHN ROE to intervene in the unlawful and unconstitutional seizure and sexual assault of BROWN by fellow officers (including WATERMAN), BROWN suffered significant pain along with severe mental and emotional harm.

124.    JOHN DOES 1-20, JANE DOES 1-5 and JOHN ROE acted with actual malice when they refused to intervene to prevent or stop the unlawful and unconstitutional detention and sexual assault of BROWN by other officers (including WATERMAN).

125.    BROWN is entitled to recover (a) reasonable and appropriate compensatory damages, (b) punitive damages, (c) costs, expenses and reasonable attorney's fees, and (d) such other and further relief as this Court deems necessary and proper from JOHN DOES 1-20, JANE DOES 1-5 and JOHN ROE for their failure to intervene to prevent or stop the unlawful and unconstitutional sexual assault.

## COUNT TWELVE

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS UPON BROWN BY WATERMAN

### (Virginia Common Law Claim)

126.    All previous paragraphs of this Complaint are incorporated herein by reference and are re-alleged as if restated.

127.    WATERMAN acted with actual malice when he intentionally and cruelly committed sexual assault against BROWN on May 19, 2023.

128.    WATERMAN's conduct was intolerable, outrageous and shocks the conscience of any reasonable person.

129.    WATERMAN engaged in this vicious conduct with the deliberate intent of causing extreme emotional distress in the form of excruciating pain, torment and fear in order to fulfill his own grotesque, prurient interest.

130.    No person could be expected to endure the emotional distress that WATERMAN caused to be inflicted up BROWN.

131.    BROWN is entitled to recover compensatory damages, costs, punitive damages, reasonable attorney's fees and such other relief as this Court deems appropriate from WATERMAN due to his intentional infliction of emotional distress upon BROWN on May 19, 2023.

## COUNT THIRTEEN

### CIVIL ASSAULT AND BATTERY BY DEFENDANTS WATERMAN, JOHN DOES 1-20, JANE DOES 1-5 AGAINST BROWN

### (Virginia Common Law Claim)

132.    All previous paragraphs of this Complaint are incorporated herein by reference and are re-alleged as if restated.

133.    WATERMAN without cause or justification, aided and abetted by, and in concert with, certain JOHN DOES 1-20 and JANE DOES 1-5, unlawfully assaulted and battered BROWN by sexually assaulting him as described above.

134.     BROWN did not consent to being assaulted or battered and did not consent to the sexual assault by WATERMAN.

135.     WATERMAN acted with actual malice when he assaulted and battered BROWN on May 19, 2023.

136.     WATERMAN acted in wanton and willful disregard of the BROWN's rights when he assaulted and battered BROWN on May 19, 2023..

137.     As a direct and proximate result of WATERMAN's unlawful assault and battery, BROWN suffered significant physical injuries, mental anguish, and emotional harm.

138.     BROWN is entitled to recover (a) reasonable and appropriate compensatory damages (b) punitive damages, (c) costs, expenses and reasonable attorney's fees, and (d) such other and further relief as this Court deems necessary and proper from WATERMAN, JOHN DOES 1-20 and JANE DOES 1-5 for the injuries he sustained as result of assault and battery on May 19, 2023.

## COUNT FOURTEEN

**MUNICIPAL LIABILITY OF THE CITY OF LYNCHBURG TO BROWN– UNCONSTITUTIONAL CUSTOM OR PRACTICE -  BODY CAVITY SEARCH**

**(42 U.S.C. § 1983 - 4th and 14thAmendments)**

139.     All previous paragraphs of this Complaint are incorporated herein by reference and are re-alleged as if restated.

140.     The LPD maintains a facially constitutional policy with regard to strip searches and body cavity searches.

141.    However, by pattern of conduct as described above, LPD officers in general (and WATERMAN in particular) routinely engage in body cavity and strip searches that violate the official written policies.

142.    WATERMAN's sexual assault of BROWN was conducted under the pretext of a body cavity search.

143.    LPD officers routinely fail to follow their facially constitutional policies by engaging in the unconstitutional custom of using excessive force.

144.    The CITY OF LYNCHBURG has been put directly on notice of the existence and extent of the unconstitutional custom of condoning and approving unlawful and unconstitutional strip searches and body cavity searches through a series of lawsuits, complaints, press coverage and investigations, but the City has done nothing to end the custom.

145.    The CITY OF LYNCHBURG has acted with deliberate indifference to the constitutional rights of its residents and citizens to be free from unlawful and unconstitutional strip searches and body cavity searches by LPD officers.

146.    The custom of the police officers employed by the CITY OF LYNCHBURG  of conducting unlawful and unconstitutional strip searches and body cavity searches was a direct cause and moving force behind the injuries BROWN sustained.

**WHEREFORE**, Plaintiff, DA'QUAN HUNT, requests that this Court grant him the following relief:

(a)    Judgment against each of the Defendants, jointly and severally, in the amount of TEN MILLION DOLLARS ($10,000,000.00) and such additional damages as may be proven at trial;

(b)    Punitive damages from Defendants WATERMAN, JOHN DOES 1-20, JANE DOES 1-5 and JOHN ROE in such amount as proven at trial;

(c)    Costs and expenses, including reasonable attorney's fees;

(d)    Injunctive relief to prevent further unlawful conduct;

(e)    All such other legal and equitable relief as the Court deems appropriate;

**AND FURTHER** Plaintiff STANLEY BROWN, JR., requests that this Court grant him the following relief:

(a)    Judgment against each of the Defendants, jointly and severally, in the amount of TEN MILLION DOLLARS ($10,000,000.00) and such additional damages as may be proven at trial;

(b)    Punitive damages from Defendants WATERMAN, JOHN DOES 1-20, JANE DOES 1-5 and JOHN ROE in such amount as proven at trial;

(c)    Costs and expenses, including reasonable attorney's fees;

(d)    Injunctive relief to prevent further unlawful conduct;

(e)    All such other legal and equitable relief as the Court deems appropriate; and

**A JURY TRIAL IS DEMANDED.**

Respectfully Submitted,

**DA'QUAN HUNT and STANLEY BROWN**
**By Counsel**

**JAMES RIVER LEGAL ASSOCIATES**
**7601 Timberlake Road**
**Lynchburg, Virginia 24502**
**P (434) 845-4529**
**F (434) 845-8536**

**By: /s/ M. Paul Valois**
    **M. Paul Valois, Esquire**
    **Counsel for Plaintiff**
    **Virginia State Bar No. 72326**
    **mvalois@vbclegal.com**